*396 OPINION OF THE COURT
Harold Tompkins, J.
The appointment of police officers, who are temporarily assigned to perform the duties of a detective for more than 18 months, to the position of a detective, pursuant to Administrative Code of the City of New York § 14-103 (b) (2) and the practice of the respondent Safir as Commissioner in adopting and enforcing a policy that allows police officers to execute a waiver of the statute and serve beyond the 18-month period without being appointed as a detective are the issues before this court. They arise in the context of a petition to enjoin the enforcement of the waiver document, directing respondents to comply with the Administrative Code provision, declaring the waivers entered into by any police officers to be void and directing respondents to reinstate as detective those officers reassigned due to their failure to execute the waiver and the legal fees incurred in this matter.
PACTS
Petitioner Scotto is president of the Detective Endowment Association. Petitioner Taughram is a police officer assigned to the Bronx Narcotics South Detective Command since March 25, 1996. He signed a waiver on October 17, 1996 in order to remain assigned to detective work. Petitioner Cooper is a police officer who was assigned to the Bronx Narcotics South Detective Command on March 25, 1996. Due to his refusal to sign the waiver document, on October 17, 1996, he was returned to uniformed assignment via transfer. Petitioner Ojeda is a police officer assigned to Brooklyn North Narcotics Squad since April 1, 1996. He refused to sign the waiver document on October 17, 1996 and is subject to transfer to a nondetective assignment.
The City has developed recent initiatives to fight major crime by commencing enforcement initiatives in various locations aimed at narcotics trafficking. These initiatives required the infusion of additional resources, amounting to almost 900 additional officers. Due to budget limitations, these assignments were to be for a six-month period.
The respondents were aware of the potential for additional cost if the assignments continued for 18 months and the officers had to be designated as detectives. Many of the officers who were temporarily assigned to these special initiatives wished to continue this work. The Police Department wanted the benefit *397 of the crime reduction associated with the special initiatives but also wanted to avoid the cost of additional salaries for detective designation. The solution that respondents adopted was the waiver document.[1] A police officer signing the waiver document would be permitted to continue in the special initiative assignment and would receive credit for six months’ detective work. The next 24 months of assignment to detective duties would not be credited. Time beyond the 24-month period would *398 be credited towards detective designation. In essence, the police officer signing the waiver document will do detective work for two years without being credited for doing such work or receiving detective grade payment. In October 1996, 888 officers assigned to the various special initiatives were presented with the opportunity to sign the waiver form. Six hundred seventy-two signed the form, 169 declined to sign the form and were transferred to nondetective work and 47 have not yet signed the form and are still on temporary assignment to one of the special initiatives.
STATUTORY HISTORY
The requirement that a police officer assigned to do detective work be designated as a detective is contained in Administrative Code § 14-103 (b) (2), as amended by Laws of 1990 (ch 755). It states that: "Any person who has received permanent appointment as a police officer and is temporarily assigned to perform the duties of a detective shall, whenever such assignment exceeds eighteen months in duration, be appointed as a detective and receive the compensation ordinarily paid to a detective performing such duties”.
This amendment modified the prior provision of the Code that authorized the Police Commissioner to organize and maintain a detective bureau and to detail to it those members he deemed necessary. Revocation of designation may be made prior to three years’ continuous service for any reason and after three years pursuant to Civil Service Law § 75 (1) (e) after a hearing unless the reduction is done for reasons of economy, consolidation or curtailment of activity.
In July 1990, the Administrative Code amendment adding the 18-month designation requirement was adopted by the Legislature and signed by the Governor.[2] The Mayor strongly opposed the bill arguing that it encroached on the Police Commissioner’s discretion regarding appointment to detective status.[3] He also raised the significant additional cost of promotions. Supporters of the bill argued that indefinite temporary status was bad for the morale of the officers assigned and the police force as a whole. They contended that 18 months was a *399 sufficient time to evaluate the performance of an officer as a detective and resolution of an officer’s status, after such a period, would benefit the police force and improve its crime-fighting ability. The policy arguments must be regarded as resolved by the enactment of the bill into law (Matter of Sutka v Conners, 73 NY2d 395 [1989]).
After adoption of the statute, the Police Department issued an order determining the application of the 18-month detective designation rule to personnel assigned to certain specified commands. In Matter of Scotto v Dinkins (NYLJ, Oct. 13, 1992, at 28, col 1 [Sup Ct, NY County]) Justice Myriam Altman granted a petition to enjoin enforcement of Order No. 61 and directing the governmental respondents to comply with Administrative Code § 14-103 (b) (2) as amended by Laws of 1990 (ch 755). The Appellate Division, First Department, affirmed this opinion (194 AD2d 415 [1993]), holding that refusal to retroactively designate or redesignate police officers who attained 18 months’ detective service after the statute’s effective date of January 18, 1991, violated the clear and unambiguous terms of the law. The Court of Appeals upheld this judgment (85 NY2d 209 [1995]). It found that the legislative purpose was to limit the Commissioner’s discretion and to mandate designation as a detective of any permanently appointed police officer assigned to performing detective duties for more than 18 months. It rejected the normal deference due to the Commissioner in his interpretation of the statute. The Court of Appeals instead found that the legislative intent was to remedy morale and inequity problems caused by indefinite assignment to detective work without proportionate pay and benefits. Specifically, the Commissioner’s actions in drawing discrete classifications to which the 18-month requirement would not be applicable was held to go against the very purpose of the amendment and thus to be improper (supra, at 214).
LEGAL ANALYSIS
This petition has arrived at the courthouse with an extensive background that this court has related above. The policy determination of the democratic branches of government is that 18 months is a sufficient period for temporary detective assignment and that a police officer should therefore either be designated a detective if he is to continue performing detective work or he should be returned to uniformed status after no longer than 18 months doing detective work.
While phrased as a waiver of individual rights, the City’s papers submitted in opposition identify a functional classifica *400 tion of the special initiatives to which the Police Commissioner wishes to obtain detective work from police officers without detective pay and benefits. The governmental respondents have raised the issue of the cost, of the additional salaries that was rejected by the Legislature in 1990 when it adopted the new law and the issue of the Police Commissioner’s discretion over the force that was rejected both by the Legislature in 1990 and by the Court of Appeals in 1995 when it affirmed Justice Altman and the Appellate Division and directed the governmental respondents to comply with Administrative Code § 14-103 (b) (2). This affirmed judgment may not be circumvented through the mechanism of a waiver.
An institutionalized "temporary assignment” of more than 18 months is the clear purpose of a waiver document which is made available to police officers assigned to detective work and who would be accruing credit for the time they do detective work. If the Police Commissioner determines that in order to continue the significant and successful crime reduction that the special initiatives have accomplished, he needs police officers to continue doing detective work for more than 18 months, he must pay them accordingly. If the Police Commissioner decides that his resources are better spent by reducing the number of special initiatives and assigning the police officers previously assigned to them to uniformed assignment, he may do that. If the Police Commissioner wishes to rotate police officers assigned to doing detective work on a regular basis so they do not accrue 18 months, whether the inefficiency involved outweighs the cost savings is a policy decision. However, the Police Commissioner cannot gain the benefit of long-term assignment to detective work without designation of the police officer doing such work as a detective. In Matter of Scotto v Dinkins (85 NY2d 209, supra) the Court of Appeals upheld the Legislature’s limitation of the Police Commissioner’s authority and the Commissioner may not circumvent the Court’s ruling through either special initiative units or a waiver by the officer of the public policy determination that a police officer’s detective status must be resolved in 18 months.
CONCLUSION
The petition seeks the same relief as the application for an injunction and since no factual disputes have been identified, the petition is granted to the extent of enjoining respondents from requesting or requiring execution of a document purporting to waive rights under section 14-103 (b) (2) of the Adminis *401 trative Code, directing respondents to comply with Administrative Code § 14-103 (b) (2), declaring null and void ab initio any document purported to be waiving rights under section 14-103 (b) (2) and directing reinstatement into the detective career path for any police officer transferred due to their refusal to execute such purported waiver.[4] The application for attorneys’ fees is denied.

. The waiver document reads as follows:
"WAIVER OF RIGHTS UNDER SECTION 14-103(b)(2) OF "THE NEW YORK CITY ADMINISTRATIVE CODE TO "DETECTIVE APPOINTMENT
"I, Police Officer_
Tax #_SOC SEC #_hereby accept assignment to_effective_and waive
any right I may have under Section 14-103(b)(2) of the New York City Administrative Code, including my right to receive automatic appointment to the position of detective after performing detective duties for eighteen (18) months and any right to accrue such time that arises or may arise from such assignment. I understand that executing this waiver does not allow for a period of assignment to detective duties in excess of twenty four months and that I may be removed from such assignment at any time during that period.
"By accepting this assignment, I understand that I am waiving any right I may have under Section 14-103(b)(2) to receive an appointment to the position of detective after performing detective duties creditable under the Career Path Program for eighteen (19) [sic] months or more and that I am waiving my right to receive that appointment where I perform detective duties described herein for more than eighteen (18) months in such assignment.
"I am executing this waiver in consideration for the City’s agreement to this waiver, for my desire to remain in the assignment without being removed at the end of a six (6) month period, and because the initial six month period of such assignment will be credited and accrue towards a future detective assignment apart from the one herein, all of which is to my benefit.
"I have carefully read all of the provisions of this waiver and have had all questions answered concerning the provisions herein.
"I understand that I am under no requirement to sign this waiver and that I enter into it freely without coercion or duress.
"I acknowledge that I have had the opportunity to consult with an attorney and/or a union representative to have the meaning and consequences of this waiver fully explained to me.
"DATED:_
"
Signature
"Sworn to before me this_day
"of_, 199_
Notary public

. A copy of the legislative Bill Jacket has been placed in the motion file and is therefore available to the Bar.

. Despite the Mayor’s recommendation against approval of the bill, it received a home rule message passed by the City Council. The Court of Appeals decision in City of New York v Patrolmen’s Benevolent Assn. (89 NY2d 380) is not applicable to this case since the determinative factor in that opinion was the failure to pass a home rule message.

. The toll of the 18-month period issued by Justice Stephen G. Crane on December 14, 1996 and continued by this court following oral argument on December 14, 1996 is continued for two business days from the date of this decision. The stay issued by Justice Crane and continued by this court on December 20,1996 is continued pending signature of the judgment settled on this decision.