■ In the Matter of MARC BROWN et al., Appellants, v BERNARD KERIK, as Police Commissioner of the City of New York, et al., Respondents. [816 NYS2d 41]—

Order and judgment (one paper), Supreme Court, New York

County (Joan A. Madden, J.), entered April 1, 2004, which, in a CPLR article 78 proceeding seeking to compel respondent Police Commissioner to designate petitioners as detectives third grade, and related relief, (1) denied petitioners' motion to confirm the Special Referee's report finding that the duties performed by petitioners in the New York Police Department's (NYPD) Evidence Collection Team (ECT) are equivalent to those performed by detectives in the NYPD's Crime Scene Unit (CSU), (2) found that there is no such equivalence, and (3) denied the application and dismissed the petition, affirmed, without costs.

The motion court properly refused to adopt the Special Referee's report. The record demonstrates that the investigative crime-scene functions performed by the CSU involves more extensive training, more sophisticated equipment, more serious crimes and more coordination with the District Attorney's office than the investigative crime-scene functions performed by the ECT. Thus, the court correctly ruled that the Police Commissioner's classification of the ECT as a nondetective track command is rational (*see Matter of Finelli v Bratton*, 298 AD2d 197, 198 [2002], *lv denied* 100 NY2d 505 [2003]; *Matter of Marti v Kerik*, 307 AD2d 836, 837 [2003]). Concur—Marlow, J.P., Nardelli, Williams and Sweeny, JJ.

McGuire, J., concurs in a separate memorandum as follows: I concur on constraint of our decisions in *Matter of Scotto v Giuliani* (288 AD2d 102 [2001], *lv denied* 97 NY2d 613 [2002]), *Matter of Finelli v Bratton* (298 AD2d 197 [2002], *lv denied* 100 NY2d 505 [2003]), and *Matter of Marti v Kerik* (307 AD2d 836 [2003]).

This proceeding was litigated on the assumption that the critical issue was whether the duties performed by petitioners in the ECT, designated by the Police Commissioner as a nondetective track command, were comparable to the duties performed by investigators in the CSU, designated by the Police Commissioner as a detective-track command. Nothing in the controlling statute, section 14-103 (b) (2) of the Administrative Code of the City of New York, remotely suggests that the duties performed by persons in the CSU constitute the benchmark. To the contrary, the statute sweepingly provides as follows: "Any person who has received permanent appointment as a police officer and is temporarily assigned to perform the duties of a detective shall, whenever such assignment exceeds eighteen months in duration, be appointed as a detective and receive the compensation ordinarily paid to a detective performing such duties."

Thus, although the statute does not define "the duties of a detective," those duties are the benchmark. The duties of

individuals assigned by the Police Commissioner to the CSU are the benchmark only if and to the extent the duties they perform are quintessentially or paradigmatically the "duties of a detective." Whatever the Police Commissioner's view on that subject may be, the Court of Appeals made clear in *Matter of Scotto v Dinkins* (85 NY2d 209 [1995]) that it is not binding on either persons who claim the protections of the statute or the judiciary.

In *Scotto*, the Court noted that section 14-103 (b) (2) "was enacted to remedy morale and inequity problems resulting from indefinitely assigning officers to detective/investigative duties without providing proportionate benefits and security" (*id.* at 213 [citations omitted]). The City argued that "the Police Commissioner retains the discretion to reasonably interpret the phrase ['duties of a detective'] and determine what investigative duties fall within the statute's protective mandate" (*id.* [citations omitted]). The Court, however, disposed of the City's argument as follows: "Notwithstanding the Legislature's failure to define the statute's operative term, we cannot agree that deference is due the Commissioner in the respects sought. Under the circumstances of this case, the Commissioner functionally seeks to draw discrete classifications and, thus, to exert a legislative function, cutting directly against the purpose of the very statutory amendment at issue . . . It was precisely because of the Police Commissioner's unbridled discretion in making such indefinite designations to the detective rank that the Legislature was repeatedly importuned to make changes to curtail that power and eventually interposed its policy choice" (*id.* at 214 [citation omitted]).

That the phrase "duties of a detective" in section 14-103 (b) (2) has no necessary connection with the duties performed by investigators in the CSU also is clear from Civil Service Law § 58 (4) (c) (ii). That provision, as currently enacted, is applicable to jurisdictions "other than a city with a population of one million or more," and provides that under specified circumstances a *permanently appointed police officer or deputy sheriff* who "is temporarily assigned to perform the duties of detective or investigator shall, whenever such assignment to the duties of a detective or investigator exceeds eighteen months, be permanently designated as a detective or investigator.'"* Although what the Legislature intended with the phrases "duties

---

* A prior version of this provision first was enacted in 1990, and similarly referred to a person "temporarily assigned to perform the duties of a detective" (L 1990, ch 29, § 1). Legislation amended the statute (L 1997, ch 134, § 1) in response to the decision by the Court of Appeals in *Matter of Wood v*

of a detective" and "duties of investigator" is far from obvious, its intent that the phrases have a meaning applicable throughout the state seems clear.

Whether the Merit and Fitness Clause of the New York Constitution colors the meaning of the phrase "duties of a detective" is an issue the parties have not briefed, and I express no opinion on it. But in my view, the parties have erroneously assumed that petitioners' rights turn on fine, if not exquisite, judgments about the extent to which the duties they perform are comparable to those performed by investigators in the CSU. I do agree, however, that affirmance is required under our precedents and add only that guidance from the Legislature or the Court of Appeals on the meaning of the phrase "duties of a detective" is devoutly to be wished.

*Irving* (85 NY2d 238 [1995]) holding that the then-applicable version of the provision violated the Merit and Fitness Clause of article V, § 6 of the New York Constitution. Neither the specific terms of the 1997 amendments nor those of subsequent amendments are relevant to this appeal.